## In the Matter of the Application of the Doylestown Distilling Company for a Distiller's License.

*Liquor law—Refusal of license—Assignment of error—Impeachment of record.*

Assignments of error will be dismissed when it appears that they cannot be sustained without impeaching the record.

The appellate court will not revise the judgment of the court below where the error assigned alleged error in not according petitioners for a license a hearing when the order of the court below recites the fact that there was a hearing at the time appointed by the standing rule; that the evidence submitted on the hearing was considered; and that due regard was had to the number and character of the petitioners.

Argued Nov. 23, 1898.   Appeal, No. 168, Oct. T., 1898, by Doylestown Distilling Co., from decree of Q. S. Bucks Co., refusing application for distiller's license. Before RICE, P. J., ORLADY, SMITH, W. W.. PORTER and W. D. PORTER, JJ. Affirmed.

Application for distiller's license.   Before YERKES, P. J.

It appears from the record that the petition and bond were in the usual form.   It appears from the docket entries that an application was filed on April 11, 1898, and refused on June 8, 1898.   From the minutes it appears that on "May 9, 1898, the court opened at 10:35 o'clock A. M., HON. HARMAN YERKES, President Judge, on the bench. Eo die. The petition of the Doylestown Distilling Company, Limited, for a distiller's license argued and c. a. v.  June 8, 1898.  Court opened at 9:50 o'clock A. M., HARMAN YERKES, President Judge, on the bench." The rule of court is as follows: "Sec. 2. The court fix the second Monday in May as the time when applications for licenses shall be heard, and the hearing of such applications shall be continued from day to day and for such length of time as may be necessary to dispose of them.  Cases may in the discretion of the court be held under advisement or continued for further hearing to some day certain when they shall be entitled to precedence over all other business except such as may be also assigned for the same day."  On June 8, 1898, the court filed the following decree : Now June 8, 1898, the within peti-

tion came up, being called in its order, was heard in open court at the time appointed by standing rule, and upon consideration, of the record and the evidence submitted, together with the present knowledge of the court, respecting the fitness and qualifications of the applicant and of the place; after hearing, and giving due regard to the number and character of the petitioners, the application is refused.

*Errors assigned* were (1) in refusing a license to the Doylestown Distilling Company, Limited, by reason of the court's failure to comply with section 2 of the license rules of said court, by which failure the applicant had no hearing. Said court not having fixed any "day certain" for a hearing, thereby exercising an arbitrary discretion. (2) In stating its opinion that this petition "came up being called in its order, was heard in open court at the time appointed by standing rule." No such hearing was had, but the court simply announced that "it would be held under advisement," fixing no time for a hearing as is provided for by the rules of court. (3) In its statement that evidence has been submitted after having by its action refused a hearing and an opportunity to the present evidence. (4) In refusing the license upon the ground of the "consideration of the record," that being not a legal reason. (5) In refusing the license upon the ground of "the personal knowledge of the court respecting the fitness and qualifications of the applicants," because the court had no such knowledge. (6) In refusing the license, no hearing having been had. (7) In not approving the bond.

*J. D. James*, with him *N. C. James*, for appellant.—This case practically turns upon two points : Did the court below exercise a judicial discretion or an arbitrary one? We point to the whole record as an answer to this and cite in support of our position: Pollard's Appeal, 127 Pa. 507 ; Prospect Brewing Co.'s Appeal, 127 Pa. 523; Johnson's Appeal, 156 Pa. 323; Gross's Appeal, 161 Pa. 344; Kelminski's Appeal, 164 Pa. 231; Gemas's Appeal, 169 Pa. 43; Doberneck's Appeal, 1 Pa. Superior Ct. 99; Lauck's Appeal, 2 Pa. Superior Ct. 53; The Doylestown Distilling Company's Appeal, 6 Pa. Superior Ct. 87.

Did the court err in failing to give us a hearing? It certainly

did. The whole record shows it. Under the rule of court we were obliged to follow the practice and wait for the court to fix a day. It may be asked why we did not urge the court to fix a day. In answer to this we say that it would have been in direct opposition to all our practice, and in addition to that, what could we fix a day to hear; no remonstrance, no objection, no charges of violation of the law, how could we prepare? We could not meet what we did not know. Is it just, fair or legal to say that we should have summoned witnesses to meet every possible charge that could have been preferred against us? We were ready and waiting and believed that our license would be granted. In numerous other cases, in every case so far as we know, it has been the practice of this court to grant the license held under advisement and then take a rule on the applicant to show cause why it should not be revoked, at the same time giving the reasons for the rule, thereby giving us a chance to prepare to meet them. This was all we asked.

In Gross's Appeal, 161 Pa. 344, the Supreme Court held that "the court is bound to hear and consider."

In Kelminski's Appeal, 164 Pa. 231, the same court says, "there must be a hearing," and these were followed in Gemas's Appeal, 169 Pa. 43. Outside of the opinion of the court is there anything on the record to show even a star chamber hearing. The record shows that there was no hearing and our license was refused without even the right granted to the meanest criminal, that of a hearing.

No paper-book or appearance for appellee.

PER CURIAM, December 15, 1898:

We are asked to reverse the order of the court below upon the ground that the petitioners were not accorded a hearing. The order recites the fact that there was a hearing at the time appointed by the standing rule; that the evidence submitted on the hearing was considered; and that due regard was had to the number and character of the petitioners. There is nothing in the court minutes which is inconsistent with the record thus made up. Construing the record as a whole, and accepting it as verity, there was a hearing on May 9, the time appointed by the standing rule, and the matter was then held

under advisement until June 8, when the final order was made. The minutes of May 9 do not show that the application was continued for further hearing; therefore it was not necessary under the rule of court to fix a time when the decision would be rendered. We need not discuss the case further. We have said enough to show that the assignments of error cannot be sustained without impeaching the record, which, of course, we cannot do.

The order is affirmed.