|       |     |
|-------|-----|
| 218   | 487 |
| f218  | 493 |
| f218  | 494 |

218   487
38SC 1  3

# Commonwealth v. Delero, Appellant.

*Criminal law—Murder—Continuance—Discretion of court—New trial.*

The action of the court of oyer and terminer in refusing a continuance of a murder trial, where only fifteen days had elapsed from the date of the murder to the date of the trial, will not be reviewed, where it appears that no injustice resulted, and it also. appears the witnesses in the case were of a floating population, and that a speedy trial was necessary to insure their attendance.

An application for a continuance on the ground of want of time for preparation by counsel and for obtaining witnesses in behalf of a defendant, is an appeal to the sound discretion of the court, and an appellate court will not review the exercise of such discretion except for gross abuse.

In the absence of a rule of court or an act of assembly the court is not bound to follow a custom of continuing without cause a criminal case which has been returned within ten days of the beginning of the session.

The discretion of the court below in refusing to grant a new trial in a murder case is not reviewable error.

Argued April 15, 1907.   Appeal, No. 150, Jan. T., 1907, by defendants, from judgment of O. & T. Lancaster Co., Sept. T., 1906,· No. 172, on verdict of murder in the first degree in case of Commonwealth v. Anthony Delero, Joseph Celione, Stephen Carlui and Silverio Rodelli.   Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.   Affirmed.

Indictment for murder.   Before LANDIS, P. J.

The circumstances of the killing are recounted in the opinion of the Supreme Court.

Verdict and judgment of guilty of murder of the first degree.

On a rule for a new trial LANDIS, J., filed an opinion which was in part as follows:

It was alleged that, in accordance with an unwritten rule of the court, the cases, having been returned within ten days of the beginning of the sessions, should have been continued without other cause to the next term.   After examination counsel candidly admitted that they had found no rule of court upon

the subject and no act of assembly to sustain their position, and this is, therefore, not now open to doubt. Without going into the question of right, we may concede that cases have been at times continued upon this ground; but because of this, however, I cannot see that the court was therefore bound to follow such a·procedure. As a uniform practice, it was a bad practice at best, even though existing. In these more modern times, it is impossible to dispatch business and yet conform to old customs of slow trials and indefinite delays. While every defendant is entitled to a fair trial, it should be as expeditious as the circumstances fairly warrant, and at least the proverbial law's delays should be, as far as possible, avoided. The rights of a defendant occupy no higher ground than the rights of society, and when a custom exists which impedes instead of aids in the administration of justice, it should be abrogated. It is better in its breach than in its observance. Therefore, even if it was for the first time broken in this trial, and the defendants thus felt the force of its repudiation, that fact should not affect the results arrived at, if they received a fair trial and their whole case was properly presented before an intelligent jury. I believe that they have no just reason to complain in this regard.

*Errors assigned* among others were (1) in refusing a continuance; (2) in refusing a new trial; (3) in refusing the defendants the benefit of a custom alleged to prevail in the criminal courts of Lancaster county, to wit: that any defendant returned to court less than ten days before the beginning of the sessions, is entitled as of right to a continuance until the next session.

*H. Frank Eshleman,* with him *M. F. Sheaffer,* for appellant.—The trial judge in this case abused his discretion in not continuing the case, so that the defendants might have time to prepare for trial: Dougherty v. Com., 69 Pa. 286; John v. State, 38 Tenn. 48; Polite v. State, 78 Ga. 347; State v. Lund, 49 Kan. 580 (31 Pac. Repr. 146); State v. Rhea, 25 Kan. 576; Howell v. State, 5 Ga. 48; Maddox v. State, 32 Ga. 581; Murphy v. Com., 92 Ky. 485 (18 S. W. Repr. 163); State v. Wood, 68 Mo. 444; Chandler v. Barker, 2 Harr. (Del.) 316;

Schaffer v. Schaffer, 5 N. Y. Supp. 544; State v. Pool, 50 La. Ann. 449 (23 So. Repr. 503); Dunn v. The People, 109 Ill. 635; Conley v. The People, 80 Ill. 236.

*J. W. Brown,* district attorney, for appellee.—A motion of postponement is addressed to the sound discretion of the court, and the refusal of such motion is not ordinarily assignable for error even if excepted to at the time : Commonwealth v. Dietrich, 7 Pa. Superior Ct. 515 ; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Buccieri, 153 Pa. 535; Com. v. Bezel, 168 Pa. 603; Com. v. Renze, 216 Pa. 147.

A denial of a motion for a new trial is not reviewable in an appellate court: Com. v. Fitzpatrick, 1 Pa. Superior Ct. 518; Howser v. Com., 51 Pa. 332; Cathcart v. Com., 37 Pa. 108; McGinnis v. Commonwealth, 102 Pa. 66; Alexander v. Commonwealth, 105 Pa. 1; Commonwealth v. Eisenhower, 181 Pa. 470.

OPINION BY MR. JUSTICE ELKIN, June 3, 1907 :

Sixteen Italians were living in a shanty near the railroad work in which they were engaged. On the evening of August 30, 1906, the four defendants arrived at the shanty and remained with their countrymen until between eight and nine o'clock, at which time the men living at the shanty prepared to retire for the night. As soon as they got inside the shanty the four defendants entered and proceeded to demand money from them. When they got money from a man they ordered him to go to bed. When they came to Albamese, the murdered man, he told them he had only fifty cents, which they refused to accept with disparaging remarks. Albamese insisted that it was all he had, and informed them if they would go upstairs with him he would show them he had no more money. One of the defendants went upstairs with him while the other three remained downstairs and proceeded to rob one of the inmates of the shanty. In a few minutes thereafter one of the defendants who had remained downstairs joined Albamese and the other defendant upstairs, and while the two defendants upstairs were wrangling with Albamese about his money, the two defendants downstairs stood at the door of the shanty, one with a revolver and the other with a stick,

declaring they would kill anyone who attempted to get out. While the two upstairs were quarreling with Albamese one or both of the defendants at the door called out to the two upstairs: " Stab him, shoot him, or do anything with him." When the two defendants upstairs found that Albamese either would not or could not give them any more money, as the evidence clearly shows, they proceeded to murder him.    There were upwards of a dozen stab wounds on his body and head. The left lung was pierced, the right kidney cut, and a bullet passed under the left shoulder, penetrating the lung and heart and lodging in the spinal column.    After the killing the four defendants left the shanty together, avoiding the public road, and secreted themselves during the night in woods some miles away.    Three of them remained in the woods while the fourth one went to Parkesburg and purchased new clothing, caps and other things for them.    After they had changed their clothing they separated, two walking in one direction, and the other two taking a train some hours later.    On the night of the killing, warrants were sworn out charging murder, and the defendants were arrested and committed on the following day.

These are the substantial facts, proven at the trial, on which the commonwealth relies to sustain a conviction for murder of the first degree.    That a brutal crime was committed is not denied, nor can it be successfully contended that all of the defendants were not in some measure responsible for what occurred, but it is strenuously urged that all of the defendants were not equally guilty, and that a new trial should be granted in order that all of the facts may be more fully presented.    On this question the learned trial judge charged the jury that if the defendants were jointly concerned in robbing the Italians living at the shanty, and in the perpetration of the robbery, Albamese was killed by one or two of the defendants, while the others were present aiding in the accomplishment of the unlawful purpose, all should be convicted of murder, for under such circumstances the act of one was the act of all.    On the other hand, the jury was carefully charged, if satisfied by the evidence, that the defendants entered the shanty for no unlawful purpose, but, after they were there, one or more of them killed Albamese, either willfully and premeditatedly, or in a sudden quarrel, then such person could only be convicted of the

crime which the jury should determine from the evidence he or they committed. The general charge carefully instructed the jury as to the different degrees of murder, manslaughter, and all other legal questions arising under the facts of the case, and no error was committed in these respects. After a careful examination of the charge to the jury by the learned trial judge, and of his opinion refusing the motion for a new trial, we are satisfied that the case was properly presented and that no rights vouchsafed to the defendants by law were denied them.

The principal ground of complaint suggested by the assignments of error is that the trial judge abused his discretion in not continuing the case, in order that the defendants might have more time to prepare for trial. The crime was committed on August 30, 1906, and on September 13, following, the parties and their witnesses being present in court, together with counsel, the trial began. It must be conceded that the time to prepare for trial was short, and if it appeared that any injustice had been done the defendants or that any of their rights under the law had been denied them, or that any additional meritorious defense might have been presented, which would have changed the result of the verdict, if the case had been continued, or if there was any reasonable doubt about the guilt of the parties, this court might feel constrained to review the discretion of the learned court below in refusing to continue the case. The settled rule of our cases is that an application for a continuance on the ground of want of time for preparation by counsel and for obtaining witnesses in behalf of a defendant, is an appeal to the sound discretion of the court, and that an appellate court will not review the exercise of such discretion except for gross abuse: Commonwealth v. Buccieri, 153 Pa. 535; Commonwealth v. Bezek, 168 Pa. 603; Commonwealth v. Renzo, 216 Pa. 147. We are not convinced that there was any abuse of the sound discretion of the court in this case. Indeed, under its peculiar facts we are inclined to the opinion that the merits of the case could be better shown at an earlier than at a later trial. All of the witnesses to the crime, as well as the defendants themselves, belonged to a floating population without any fixed residence, and went about from place to place, never remaining long in one location. A delay in the trial would have made it difficult for either the commonwealth

or the defendants to obtain witnesses. At the trial the commonwealth produced ten out of fifteen persons who lived at the shanty, as witnesses in the case. The other five had disappeared, so that neither side was able to produce them. The ten eyewitnesses and the four defendants testified to all of the material facts and we do not see that any injustice could have been done the defendants by an early trial when such a large number of witnesses were produced to detail the circumstances surrounding the killing. A delay in the trial would have given the opportunity for all of the witnesses to leave the jurisdiction, and perhaps the state or country. It is not the intention of the law to aid criminals in their attempt to go unwhipped of justice. A decent regard for the rights of society, as well as of the rights of defendants, must be observed if the law is to be vindicated.

The assignments of error are without merit. The rulings of the learned trial judge, the charge to the jury and the opinion refusing a new trial are amply sustained by both reason and authority and we find nothing contained therein to justify a reversal by this court.

As to the application of the so-called ten day rule, which question is raised by the third assignment of error, we adopt the reasons stated by the learned trial judge in his opinion refusing a new trial.

The assignment of error raising the question that the learned court below had abused its discretion in refusing to grant a new trial cannot be sustained. The discretion of the court below in refusing to grant a new trial is not reviewable error: McGinnis v. Commonwealth, 102 Pa. 69 ; Alexander v. Commonwealth, 105 Pa. 1 ; Commonwealth v. Eisenhower, 181 Pa. 470.

The judgment is affirmed, and it is directed that the record be remitted to the court of oyer and terminer of Lancaster county for the purpose of execution.